UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONT CROSSLEY,<br><br>            Plaintiff,<br><br>    v.<br><br>ABE NIAZI, et al.,<br><br>            Defendants. | No.  2:12-cv-2180 LKK CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

  Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983.  This action proceeds on the First Amended Complaint filed November 9, 2012, in which plaintiff alleges that four defendants at Mule Creek State Prison were deliberately indifferent to his serious medical needs when he experienced post-surgical complications in his right hand.  (ECF No. 13 ("FAC").)  Pending before the court is defendants' December 20, 2013 motion for summary judgment (ECF No. 43), which has been briefed by the parties (ECF Nos. 47, 51).  For the reasons discussed below, the undersigned will recommend that defendants' motion be granted.

II. Summary Judgment Standards Under Rule 56

  Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Analysis

A. Facts

In determining whether summary judgment is appropriate, the court considers the following record facts[1]:

At all relevant times, plaintiff was a state prisoner housed at Mule Creek State Prison. (DUF 1.) In late December 2009, plaintiff broke his right hand by punching a metal door.[2] On January 8, 2010, he underwent surgery at an outside medical facility. The surgeon, Dr. Craig Lovett, inserted a plate and screws into his hand. (FAC at 17-18.[3])

1. Defendant Niazi

On January 16, 2010, plaintiff submitted a health care services request form stating:

/////

---

[1] See ECF No. 43-1 (Defendants' Statement of Undisputed Material Facts); ECF No. 47 at 5-12 (Plaintiff's Statement of Facts); ECF No. 48 (Plaintiff's Response to DUF).

[2] See ECF No. 43-2 at 15.

[3] Record citations refer to page numbers assigned by the court's docketing system.

> I had surgery for a broken hand on 1-8-10 and had the stitches removed on 1-14-10. My hand was still swollen. Today the stiches are . . . burst open and a yellowish pus[] came out which had a bad smell to it. And at this point it (i.e. pus[]) is still coming out. It burst where my knuckle is. My knuckle had to have screws in it cause it was split.

(FAC at 21.) Plaintiff had pulled back the dressing of the wound. He saw that the wound was open and had lots of yellowish pus coming out of it that smelled bad. (ECF No. 47 at 70-71.)

Abraham Niazi is a Registered Nurse who worked in the Triage and Treatment Area ("TTA") at Mule Creek State Prison. (DUF 2.) On January 17, 2010, Niazi asked that plaintiff be brought to the TTA as soon as possible for a medical assessment concerning his complaints of a right hand wound. (ECF No. 43-6 at 5.)

Plaintiff told Niazi that he needed to see the doctor. Plaintiff told Niazi that he was "told by surgeon Craig Lovett and other medical staff to notify the physician if I saw signs of infection and that I needed him to call the doctor to treat my [right] hand and change my dressing that was contaminated with foul smelling pus[]." (ECF No. 47 at 71.)

Niazi did not notice any odor emitting from the open wound. (Niazi Dec., ¶ 5; ECF No. 43-6 at 5.) He does not personally recall if he performed any treatment to the area; however, the medical form indicates that treatment was done. Niazi advised plaintiff to keep the affected area dry and clean. Niazi further advised plaintiff that if his right hand developed swelling, redness, pus with an odor, unrelieved pain, numbness, or he noticed tingling in his fingers, to come back to the TTA for treatment and further evaluation. Niazi concluded that contacting the on-call medical doctor was not warranted.[4] (Niazi Dec., ¶¶ 6-7; ECF No. 43-6 at 5.)

According to plaintiff, Niazi stated: "It's Sunday and I'm the only one here, and you'll be alright." (ECF No. 47 at 71.) Plaintiff became upset and "reiterated what I was told about

---

[4] Niazi's notes on plaintiff's health services request form indicate that plaintiff was at "risk for inf[ection] . . . open wound [right] hand. Called and spoke [with] LVN Yousef to send [inmate] to TTA ASAP. [Right] elbow . . . cast – intact. [Right] four upper phalanges . . .open skin, serous fluid . . . no . . . inf[ection] noted. [Treatment] done. . . Advised and encouraged [inmate] to keep affected [illegible] dry and clean. If [right] hand swell, redness, puss (odorous), unrelieved pain, numbness, tingling of finger noticed, come back to TTA for [treatment] and further eval[uation]." (ECF No. 43-6 at 5.)

4

notifying the physician and I expressed my fears that my [right] hand was infected." (ECF No. 47 at 72.) Niazi sent plaintiff back to his cell without scheduling a follow-up appointment with a doctor. (ECF No. 47 at 72; see ECF No 43-6 at 5.)

Plaintiff asserts that two-and-half months later when his cast came off, "the wound was closed" but his right hand was swollen. "As time went by it began to swell, became real painful and my 4th and 5th digits would become stiff, locking up frequently for days at a time." Plaintiff's fingers continued to swell and lock up intermittently. (ECF No. 47 at 72.)

2. Defendant Galloway

Dr. Richard Galloway is a medical doctor who, at all relevant times, was employed at Mule Creek State Prison as a Physician and Surgeon. (DUF 15-16.) Plaintiff's allegations concern Dr. Galloway's medical treatment of plaintiff in 2010 and his response to plaintiff's administrative appeal in 2011.

a. Medical Treatment

On November 7, 2010, ten months after his examination by Niazi, plaintiff submitted a health care services request form stating:

> I had surgery for a broken hand on January 6 2010 which left me with two screws in my knuckle and 5 more screws & plate in my hand. On the 5th of this month my hand started to swell up and was painful. It is still swollen and I have been experiencing difficulty flexing and exercising my fingers. And the area that is swollen feels hotter than the other hand.

(ECF No. 43-2 at 5.)

Dr. Galloway examined plaintiff on November 9, 2010. (ECF No. 43-2 at 7.) Plaintiff and Dr. Galloway give differing accounts of what happened at that appointment:

Plaintiff declares that he explained to Dr. Galloway that the condition of his hand was "ongoing," with it

> constantly swelling up, extremely painful with my 4th and 5th digits locking making it immobile on a frequent basis. That it is getting worse and lasting for longer periods of time. I told him I think it could be infected and something could be wrong with [the] hardware (1 plate & 7 screws). I told him I could not do my daily activities like washing my clothes, bathing, exercising[,] and do the recommended hand therapy and that my [right] hand is not going

5

> back to normal, and I explained this was ongoing [since] my first surgery by Dr. Craig Lovett and that I needed to see ortho/specialist Craig Lovett for evaluating and surgery to remove the hardware.

(ECF No. 47 at 81.) Plaintiff declares that Dr. Galloway responded "that the prison would be too reluctant to provide surgery due to cost and plaintiff's prison term" and declined to send him to an outside specialist. (Id.)

Dr. Galloway declares that plaintiff reported "that three days prior his right hand had been injured during an aggressive exercise regimen, but that the pain was improving." (Galloway Dec., ¶ 6.)

Dr. Galloway further declares that, on examination of plaintiff's right hand, there was a scar and some deformity consistent with plaintiff's report of old repair, but nothing indicating a re-fracture, infection, or other issue of immediate concern. (Galloway Dec., ¶ 6.) Dr. Galloway ordered an X-ray of plaintiff's hand and a follow-up visit in one week. (ECF No. 43-2 at 7.)

On November 23, 2010, Dr. Galloway saw plaintiff in a follow-up visit. (DUF 21.) Plaintiff declares that his hand was still painful and swollen but had better mobility. He asserts that he asked again to be sent to Dr. Lovett to have the hardware in his hand removed, but Dr. Galloway again declined to refer him to Dr. Lovett. (ECF No. 47 at 82-83.)

Dr. Galloway's medical notes for that appointment indicate that plaintiff's pain had diminished over the week and his hand had "significantly improved." Dr. Galloway's exam indicated a nearly normal range of motion in plaintiff's right hand. A wet reading was obtained of the film indicating no fracture. In view of these developments, plaintiff was directed to return to the clinic on an as-needed basis. (Galloway Dec., ¶ 7; ECF No. 43-2 at 9.) Moreover, plaintiff's final radiology report, dated November 17, 2010, failed to indicate any changes since his prior X-ray in February 2010. (Galloway Dec. ¶ 7; ECF No. 43-2 at 11, 13.) In light of these facts, Dr. Galloway concluded that plaintiff's condition did not warrant an orthopedic consult. (Galloway Dec., ¶ 7.)

b. Appeal Response

On January 6, 2011, Dr. Galloway prepared a first-level response to medical appeal No. MCSP 16-10-13110, in which plaintiff complained of swelling and limited motion in his right

1  hand and requested that the hardware be removed. (FAC at 35-36.) A request for an orthopedic

2  evaluation of plaintiff's hand had already been submitted by Physician Assistant Karen Todd on

3  December 8, 2010[5] and was pending approval and/or scheduling at that time. Such a routine

4  request typically takes one to three months for processing. Dr. Galloway concluded that an

5  urgent evaluation was not warranted. (FAC at 37-38; Galloway Decl., ¶¶ 9-10.)

6  3. <u>Defendant Todd</u>

7  At all relevant times, Karen Todd was employed as a Physician's Assistant at Mule Creek

8  State Prison. (DUF 30.)

9  On December 6, 2010, plaintiff submitted a health services request form asking for

10  treatment of his right hand after injuring it in "Ad Seg" (Administrative Segregation). (ECF No.

11  47 at 86.) Two days later, plaintiff came to the clinic complaining of trouble with flexion of the

12  No. 4 digit of his right hand and pain to the area. Plaintiff stated that his hand had been surgically

13  repaired, that he had exacerbated the injury in Ad-Seg, and that an X-ray had been taken. (Todd

14  Dec., ¶ 4; ECF No. 43-4 at 5.)

15  Plaintiff was examined by non-defendant Nurse Wnuk. Wnuk's report noted that plaintiff

16  had a surgical scar and that his right hand was "well healed" with some edema. It noted that

17  plaintiff denied any recent injury and said the swelling had always been there. It further noted

18  that plaintiff had decreased strength-to-hand grip in the range of 4 to 5. (Todd Decl., ¶ 5, Exh.

19  A.) Plaintiff again requested to see Dr. Lovett and have the hardware in his hand removed. (ECF

20  No. 47 at 91.)

21  Nurse Wnuk consulted with P.A. Todd concerning plaintiff's request to have his hardware

22  removed. After reviewing plaintiff's November 17, 2010 X-ray report, Todd concluded that an

23  urgent orthopedic consult was not warranted. On December 8, 2010, Todd requested a routine

24  referral to an orthopedic specialist, which was approved the next day. (Todd Dec., ¶ 8, Exh. A.)

25  Plaintiff declares that Todd declined to personally examine him, and that her routine

26  referral to an outside specialist, which could take three months to process, constituted inadequate

27

28  [5] See below.

7

1    treatment in light of his pain and suffering.  (ECF No. 47 at 91-92.)

2          Plaintiff filed a 602 administrative appeal seeking to have the hardware in his hand

3    removed.   As set forth above, Dr. Galloway denied this appeal at the first level of review, noting

4    plaintiff's pending routine referral to a specialist.

5    4.  Defendant Heffner

6          From June 2010 to April 2011, Leonard Heffner was employed as Chief Executive Officer

7    of Health Services at Mule Creek State Prison.  (DUF 44.)

8          On February 7, 2011, Heffner prepared a second-level response to plaintiff's medical

9    appeal No. MCSP-16-10-13110, in which plaintiff requested that the plate and screws in his hand

10   be removed.   (Heffner Dec., ¶ 4; FAC at 41-42.)  Heffner reviewed the records of plaintiff's

11   medical treatment and administrative appeals, described above.  His response noted that

12   plaintiff's December 2010 referral to an orthopedist was pending.  Heffner concluded that

13   plaintiff had received medically appropriate treatment for his hand.  (Heffner Dec., ¶¶ 5-8; FAC

14   at 41-42.)[6]

15   5. Specialist Diagnosis and Treatment

16         In March 2011, petitioner continued to seek medical treatment for his swollen right hand.

17   (ECF No. 47 at 99, 103.)  He was examined by non-defendant MCSP medical staff who noted

18   plaintiff's complaints of swelling and lack of mobility in his hand.  (Id. at 101, 105.)

19         On April 1, 2011, pursuant to P.A. Todd's referral, plaintiff was examined by his former

20   surgeon, Dr. Lovett.  Dr. Lovett noted:

> REASON FOR CONSULTATION: . . . He underwent a very difficult surgery . . . by me with multiple screws and plates and this is irritating him.  He has had no X-rays since November 2010.  He has had two subsequent injuries with no x-ray technician available today for follow-up examination following his two other injuries.
>
> OBJECTIVE FINDINGS:  He does have some swelling.  His range of motion is -10 to only about 40 degrees to the metacarpal joint of his fourth finger.  He has a well-healed surgical scar.  No signs of infection, but he feels he may have re-injured his hand, not once but

---

[6] Defendants' motion argued that plaintiff failed to exhaust administrative remedies as to the instant claims.  In reply, however, defendants concede that plaintiff pursued his administrative remedies through the third and final level of review.  (ECF No. 51.)

8

twice.

(ECF No. 43-3 at 10.)  Dr. Lovett concluded that plaintiff would be "best served with hardware removal[.]"

On May 12, 2011, Dr. Lovett surgically removed the hardware from plaintiff's right hand. Dr. Lovett noted "[l]oose hardware right 4th metacarpal" and "[p]ossible infection right 4th metacarpal." (ECF No. 43-3 at 12.)  Describing the surgical procedure, Dr. Lovett noted "extremely dense and thickened granulation tissue consistent with a chronic infection of an indolent type. . . . Each 1 of the screws was loose except for the most proximal screw. Unfortunately there was brown tinged almost chronic purulent opening tissue that was cultured ... but the fracture did appear to be, for the most part, healed."  (Id. at 13.)

One month after surgery, Dr. Lovett conducted a follow-up examination of plaintiff.  He noted that plaintiff was "seen for a postoperative visit after removal of hardware, which was loose, as well with subsequent cultures showing a positive staph infection which had been ongoing for unfortunately probably over a year since the time of surgery."  (FAC at 55.)  Dr. Lovett noted that plaintiff's swelling was significantly down, his pain had markedly improved, and that he still had a "fair amount of scarring, which is expected[.]"  Dr. Lovett recommended physical therapy to improve the range of motion in plaintiff's right hand.  (Id.)

B.  Legal Standard

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439 F.3d at 1096.  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id., citing Estelle, 429 U.S. at 104.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839.

A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

C. Discussion

Defendants assert that plaintiff has failed to establish a genuine dispute of material fact as to whether they were deliberately indifferent to plaintiff's serious medical needs in 2010 and 2011 concerning the treatment of his right hand. Making all reasonable inferences in plaintiff's favor, the court summarizes the record facts in light of the applicable legal standard:

As to Nurse Niazi, plaintiff submitted a health care services request form concerning his right hand a few days after having his stitches removed following surgery. The stitches had burst open at plaintiff's knuckle and pus was leaking out; plaintiff's hand was swollen. Niazi reviewed the request and asked that plaintiff be sent to the Treatment and Triage Area "ASAP" as plaintiff was at risk of infection of an open wound. Plaintiff told Niazi that Dr. Lovett told him to "notify

the physician" if there were signs of infection, and asked to see a doctor. After examining plaintiff, Niazi detected no odor from the pus and noted that there appeared to be no infection. Niazi concluded that contacting a doctor was not warranted.

Deliberate indifference may be shown when prison officials ignore express orders from a prisoner's treating physician. Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999). However, there is no evidence that Dr. Lovett issued a discharge order requiring plaintiff to be seen by a physician (rather than a nurse) if his wound began swelling or leaking. Moreover, while plaintiff believed his symptoms to be signs of infection, Niazi had a different opinion as to whether the wound appeared infected. He told plaintiff to keep the area dry and clean and come back for further evaluation of any of various symptoms appeared. The fact that plaintiff did not submit another health services request form concerning his hand until months later, after he re-injured the hand, suggests that plaintiff's symptoms did not significantly worsen in the weeks and months following his examination by Niazi.

While Dr. Lovett noted in June 2011 that a culture from the surgical site evidenced a "positive staph infection which had been ongoing for unfortunately probably over a year," this cannot serve to impute a "deliberately indifferent" state of mind to Nurse Niazi in January 2010. (In fact, when Dr. Lovett visually examined plaintiff's hand in April 2011, he noted "no signs of infection.") Because neither a difference of opinion between a prisoner and medical staff, nor medical negligence, amount to deliberate indifference, plaintiff has not created a genuine dispute of material fact as to Nurse Niazi.

Dr. Galloway examined plaintiff's hand in November 2010 and found no indications of infection. He ordered an X-ray of plaintiff's hand and conducted a follow-up examination one week later, during which he noted that plaintiff's pain had diminished and his hand had "significantly improved." Based on these examinations and the X-ray result, which indicated no fracture or changes since February 2010, Dr. Galloway determined that plaintiff did not need to be seen by his surgeon, despite plaintiff's request to have the hardware in his hand removed. As the evidence shows a mere difference in opinion between plaintiff and a prison doctor as to the

/////

appropriate course of treatment, plaintiff has not raised a genuine dispute of material fact on this basis.

In responding to plaintiff's administrative appeal in January 2011, Dr. Galloway noted that plaintiff's routine referral to Dr. Lovett was pending. In light of this upcoming appointment and plaintiff's recent evaluations by prison medical staff, plaintiff's belief that his condition required an urgent referral to Dr. Lovett was a difference of opinion as to the proper course of treatment. Thus plaintiff has not shown a genuine dispute of material fact as to Dr. Galloway.

In December 2010, P.A. Todd consulted with the examining nurse about plaintiff's condition and reviewed plaintiff's recent X-rays. Based on this information, she put in a routine referral for plaintiff to be examined by his surgeon, as requested. The fact that plaintiff believed his condition required an urgent – not routine – referral is a difference of opinion not actionable under the Eighth Amendment. Plaintiff thus fails to show a genuine dispute of material fact as to P.A. Todd.

Like Dr. Galloway, Heffner reviewed plaintiff's administrative appeal and noted that he recently had been referred to Dr. Lovett. In light of this upcoming appointment and plaintiff's recent evaluations by prison medical staff, Heffner concluded that an urgent referral to Dr. Lovett was not warranted. Plaintiff has not raised a genuine dispute of material fact as to whether Heffner's response, under these circumstances, constituted deliberate indifference to a serious medical need. Thus the undersigned concludes that all four defendants are entitled to summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 43) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are

////

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  May 21, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / cros2180.sj

13